## MADISON SQUARE GARDEN CORPORATION v. BRADDOCK.
### No. 5696.

District Court, D. New Jersey.
May 14, 1937.

McDermott, Enright & Carpenter, James D. Carpenter, and Carl S. Kuebler, all of Jersey City, N. J. (George W. Whiteside, of New York City, of counsel), for complainant.

Samuel B. Gould, of Newark, N. J. (Merritt Lane, of Newark, N. J., of counsel), for defendant.

FAKE, District Judge.

The plaintiff here seeks a preliminary injunction to restrain the defendant, Braddock, from rendering services as a boxer in any major boxing contest and specifically from engaging in any such contest with Joe Louis on or about June 22, 1937, or at any other time unless and until Braddock shall have served as a boxer in a contest with Max Schmeling to be held on or about June 3, 1937, or on a postponed date.

The relief sought is based upon what may be spelled out as the present existing contract between the parties. It is found that the parties commenced to contract with each other relating to the subject here involved on the 10th day of April, 1935, and thereafter a series of three supplemental or amendatory contracts were entered into between them, the last of which was dated December 12, 1936. I have studied and analyzed all of these contracts, and my conclusion is that Braddock has bound himself by the terms of these agreements so that upon becoming heavyweight champion of the world as the result of his contest with Max Baer on June 30, 1935, he bound himself not to engage in any major boxing contest with any one until he first serves the Garden as a boxer in a contest for the heavyweight championship of the world. In furtherance thereof, he has agreed to enter a championship contest with Max Schmeling under the auspices of the Garden on June 3, 1937, and in the contract, which provides for the said contest, the following clause appears: "It is understood that you" (meaning Braddock) "cannot participate in any bout with Joe Louis until after June 3rd, 1937." This clause does not in any way waive the covenant to first serve the Garden, and it would not in my opinion permit Braddock to fight Louis at a future date unless the contract in which it appears was fully performed by Braddock. This clause amounts to no more than the placing of emphasis upon the covenant that Braddock is to serve the Garden first.

On the return day of the rule to show cause, Braddock announced, through counsel, that he will not perform his part in contesting with Schmeling as his contract requires either on June 3d next or at any other time.

While I entertain no present doubts as to the foregoing findings of fact upon the evidence now before me, I, of course, reserve the right to come to contrary conclusions in the event that the examination and cross-examination of witnesses in open court on final hearing justifies a different result. Nor must this statement be taken to mean that plaintiff's case is so weakened as to its certainty that a preliminary injunction should not issue, since my decision here would result in the same final conclusion in either event, and I prefer to put it upon the broader ground above stated as being more likely to end the controversy.

The question of law involved is whether or not a preliminary injunction should issue on the foregoing state of facts preventing and enjoining Braddock from entering any major contest until he has first served the Garden pursuant to the terms of his aforesaid contracts.

This case differs very materially from those cases involving personal services of a unique character, where the contract between the parties provided affirmatively for such unique services within a definitely fixed time and negatively excluded the performer from entering the like employment for a competitor within the specified time, as in Lumley v. Wagner, 1 De G.M. & G. (Eng.) 604, and the cases subsequently dealing with the subject in this country. See "Involuntary Servitude by Injunction" by Mr. Robert S. Stevens, now Dean of Cornell University College of Law in "The Cornell Law Quarterly," Vol. VI, No. 3, page 235.

In the instant case the negative covenant has no definite limitation as to time. It may run for the life of Braddock, unless he performs his affirmative covenant to box Schmeling or box under the auspices of the Garden in conformity with his affirmative covenant.

In dealing with all such restraints upon the liberty of the individual, however voluntarily assumed, the courts are bound to ascertain whether or not they are reasonable, and in this connection time plays an important part. In the article above cited, the writer says:

"The premise of the doctrine of 'negative specific performance' is that the very inade-

quacy of money damages as compensation for the breach of the affirmative entitles B to such assistance from a court of equity as will compel A to perform the agreed services. But no one supposes that B makes out a case entitling him to an injunction by showing merely that a breach of the affirmative promise is threatened and that damages will not adequately compensate for that breach. He must establish also:

"First. That there is a negative covenant, either expressed or implied, and that the restriction imposed by that covenant is a reasonable one."

█ Since it appears that the negative covenant here involved fails to fix any definite limitation as to the length of time of its existence and might therefore forever deprive Braddock of his right to make a living in the occupation he has chosen, I am of the opinion that the covenant places an unreasonable restraint upon his liberty.

A careful reading of the very excellent briefs furnished by counsel on both sides in this case, together with the article of Dean Stevens above cited, lead me to the conclusion that the last word has not yet been said upon the extent to which Lumley v. Wagner would be, or actually is, followed in this country, nor will it be settled in the federal jurisdiction until the United States Supreme Court has dealt with the subject. During the course of the argument here, I expressed the view that there may be a question as to whether a federal court of equity could enjoin the violation of a negative covenant relating to unique personal services, where its very apparent object is an attempt to enforce the performance of such service under an affirmative covenant, because this court may be compelled to find its equity powers in this regard as they were in England in 1789 in the absence of additional statutory or constitutional authority here. Counsel on both sides were in agreement in vigorously attacking the thought that a federal court is so limited. However, it is not necessary at the moment further to pursue the doubt, much as I would like to find it settled. The obiter contained in this paragraph is injected only for the purpose of disclosing some of the uncertainties which I may desire to solve to my own satisfaction at some future time, and nothing in the opinion here is to be read as though the questions raised in this paragraph have been judicially passed upon.

An order will be entered denying a preliminary injunction.